**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 30 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

JIM FOSTER; DWIGHT MOORE;
RAY O'BRYAN; ROGER KILGORE;
PAUL JONES; KEITH ROBERTS;
MAYNARD CASTOE; JERRY HARP;
DOUGLAS BRANNON; MIKE
TAYLOR; DAVID HOUSTON; JOEL
JAKUBOWSKI; DONALD BOYLES;
DEETTA HAWKINS; CECIL
ZORNES; BENNY MORRISON;
MATTHEW KISSIRE; JIM MILLER;
PAM DUNCAN, Special
Administrator for the Estate of
DWAYNE DUNCAN; JACK
MCKERRELL; JERRY DECKER;
JAMES HILL; VERNON HARRIS;
JOHNNY BAILEY; JOHN PALMER;
LAWRENCE BLACKBOURN; and
DANNY POSTRACH,

      Plaintiffs-Appellants,

    v.

RUHRPUMPEN, INC.,

      Defendant-Appellee.

No. 03-5101

---

**APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. NO. CV-01-600-P)**

Steven R. Hickman, Frasier, Frasier & Hickman, LLP, Tulsa, Oklahoma, for Plaintiffs-Appellants.

Randall G. Vaughn (Kevin P. Doyle and John L. Randolph, Jr., with him on the brief), Pray, Walker, Jackman, Williamson & Marlar, Tulsa, Oklahoma, for Defendant-Appellee.

---

Before **HENRY, HOLLOWAY,** and **O'BRIEN,** Circuit Judges.

---

**HENRY,** Circuit Judge.

---

Jim Foster and twenty-six other individual plaintiffs filed this action against Ruhrpumpen, Inc., alleging that Ruhrpumpen violated their rights under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, by failing to retain them as employees after purchasing the pump manufacturing plant at which they had worked. The district court granted summary judgment to Ruhrpumpen, holding that 1) the plaintiffs were never employed by Ruhrpumpen and therefore could not sue Ruhrpumpen for wrongful termination; 2) the plaintiffs never filed a failure to hire claim with the Equal Employment Opportunity Commission (EEOC), and the court was therefore without jurisdiction to hear such a claim; and 3) the four plaintiffs who failed to file with the EEOC could not "piggyback" on the claims of the plaintiffs who did file. The plaintiffs now appeal.

We agree with the district court that the plaintiffs cannot assert wrongful

termination claims because they were never employed by Ruhrpumpen. However, we disagree with the district court's analysis of the plaintiffs' failure to hire claims.

In particular, as to the twenty-three plaintiffs who filed charges of age discrimination with the EEOC, we conclude that those charges sufficiently identified the parties and the action or practices at issue. Accordingly, the charges satisfy the administrative exhaustion requirement, *see* 29 C.F.R. § 1601.12(b), and those plaintiffs thus exhausted their failure to hire claims. As to the four plaintiffs who did not file charges with the EEOC, we conclude that their failure to hire claims may be heard by the district court pursuant to the single filing or "piggybacking" rule. Those four plaintiffs are similarly situated to the plaintiffs who did file failure to hire charges, and their claims arose out of the same circumstances and occurred within the same general time frame as the exhausted claims. Therefore, we reverse the district court's grant of summary judgment to Ruhrpumpen and remand for further proceedings.

## I. BACKGROUND

Prior to January 2001, the plaintiffs were employed by a pump manufacturing plant known as Flowserve, Inc., located in Tulsa, Oklahoma. In late 1999 or early 2000, Flowserve entered into an agreement to purchase another

-3-

pump manufacturer called IDP. Subsequent to this development, and as a result of action taken by the United States Department of Justice, Flowserve was ordered to divest itself of its Tulsa facility. In November 2000, Flowserve and Defendant Ruhrpumpen, Inc., entered into an agreement pursuant to which the Tulsa facility would be sold and transferred from Flowserve to Ruhrpumpen. The agreement established the end of December 2000 as a target date for the closing and transfer of the Flowserve facility. Prior to the transfer, Flowserve advised all its employees that "[w]ith the sale, each employee is effectively terminated from employment with Flowserve" and that severance benefits would be provided to all former Flowserve employees who were not re-hired by Ruhrpumpen. Aplts' App. at 182.

Leading up to the transfer, Don McCourt, the President of Ruhrpumpen and former Operations Manager of Flowserve, asked Michael Brantley, the Superintendent of Production at both Flowserve and Ruhrpumpen, to perform an assessment of the number of employees needed to run the plant after the sale. Mr. Brantley estimated that Ruhupumpen would need approximately ninety production and maintenance employees to operate the plant at the desired annual sales volume of between $30 and $35 million. Prior to the transfer, 120 production and maintenance workers were employed at the Flowserve plant.

In November 2000, the Paper, Allied-Industrial, Chemical and Energy

Workers International Union (hereinafter "PACE" or "the Union") representing the production workers at the Flowserve plant, was informed that only ninety-four production and maintenance employees would be needed following the transfer. PACE entered into negotiations with Flowserve management to determine which ninety-four employees would be retained. At PACE's insistence, management agreed to retain employees based entirely on seniority by classification.

Twenty-six former production and maintenance workers were laid off pursuant to the Union negotiations and were given separation packages prior to December 29, 2000. The remaining ninety-four production and maintenance workers reported for their first day of work with Ruhrpumpen on January 3, 2001. *Id.* at 206. They then learned that only fifty-seven employees had been re-hired by Ruhrpumpen. The other thirty-seven former Flowserve employees present on January 3 were processed for severance benefits. The plaintiffs make up the bulk of this group.

After learning that they would not be retaining their jobs, all but four of the plaintiffs filed charges of age discrimination with the Oklahoma Human Rights Commission and the EEOC. The charges state:

1.  I am over forty years of age and have years of experience at the plant. I was doing satisfactory work when terminated on 3 Jan. 2001.

2.  They terminated me and numerous others on 3 Jan. 2001, almost all of whom were older than the retained employees,

who were younger than those let go.

    3.     A significant motivating factor was age-based factors [sic].

    4.     This charge is made on behalf of all others similarly situated.

*Id.* at 144-68 (Charges filed with Oklahoma Human Rights Comm'n and EEOC). The charges identify Ruhrpumpen as the employer responsible for the discrimination and state that the discrimination occurred on January 3, 2001.

On July 24, 2001, the plaintiffs filed a petition in the Oklahoma District Court for Tulsa County, alleging wrongful termination and failure to hire in violation of the ADEA. Ruhrpumpen then removed the case to the United States District Court for the Northern District of Oklahoma and filed a motion for summary judgment. The district court granted summary judgment to Ruhrpumpen, holding that the plaintiffs could not sue Ruhrpumpen for wrongful termination because they were never employed by Ruhrpumpen and that they had failed to exhaust their failure to hire claims with the EEOC.

## II. DISCUSSION

In this appeal, the plaintiffs challenge the grant of summary judgment to Ruhrpumpen on their failure to hire claims. "We review a summary judgment grant de novo and apply the same legal standard used by the district court." *Jones v. Barnhart*, 349 F.3d 1260, 1265 (10th Cir. 2003). We consider the two groups

of plaintiffs separately, beginning with 1) the twenty-three plaintiffs who filed age discrimination charges with the EEOC ("Group l"), and then proceeding to 2) the four plaintiffs who did not file any such charges ("Group 2"). As to the first group, we conclude that the filed charges were sufficient to satisfy the ADEA's exhaustion requirement. As to the second group, we conclude that the single filing or "piggybacking" rule allows their claims to proceed in the district court despite their failure to file individual charges with the EEOC.

## A. Group 1 Plaintiffs

As noted above, all but four of the plaintiffs in this action timely filed charges of age discrimination with the EEOC. However, in their EEOC charges, these plaintiffs alleged that they were "terminated" by Ruhrpumpen. Aplts' App. at 144-68. Ruhrpumpen argues that the plaintiffs' wrongful termination claims cannot succeed because termination by Ruhrpumpen is a necessary element of such claims, and employment must precede termination. As Ruhrpumpen never actually employed the plaintiffs, it argues, this element is not satisfied.

The evidence is fairly clear that the plaintiffs were terminated by Flowserve, not by Ruhrpumpen, and that Ruhrpumpen never officially re-hired them. The plaintiffs may have been under the impression that they were retaining their jobs due to confusion stemming from the Union negotiations, but there is no evidence to suggest that they ever received word from Ruhrpumpen that they had

-7-

been officially hired as Ruhrpumpen employees.

The plaintiffs' failure to hire claims seem to more accurately describe the discrimination that allegedly occurred. However, the Group 1 plaintiffs did not use the language "failure to hire" in the charges they filed with the EEOC. Pointing to this omission, Ruhrpumpen argues that the plaintiffs failed to exhaust their failure to hire claims, and that as a result, the court lacks jurisdiction to consider the claims. The district court agreed with that analysis. Aplts' App. at 265 (Dist. Ct. Order, filed June 11, 2003) ("No charge has been filed by any Plaintiff based upon a failure to hire by Ruhrpumpen based upon age discrimination."). The central question in this case is, therefore, whether the Group 1 plaintiffs' EEOC charges were sufficient to exhaust their failure to hire claims.

"[A] plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter."[1] *Simms v. Oklahoma ex rel. Dep't of Mental*

---

[1] As the ADEA and Title VII have virtually identical requirements with respect to the filing of EEOC charges, Title VII cases are applicable here. *See Terry v. Ashcroft,* 336 F.3d 128, 151 (2d Cir. 2003) (noting that "the administrative exhaustion requirement is the same under the ADEA as it is under Title VII" and that, as a result, judicially-recognized exceptions to the Title VII filing requirement "also apply to claims brought pursuant to the ADEA"); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 395 n.11 (1982) (observing that "when Congress in 1978 revised the filing requirement of the Age Discrimination

(continued...)

*Health and Substance Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). This individual filing requirement is intended to protect employers by giving them notice of the discrimination claims being brought against them, in addition to providing the EEOC with an opportunity to conciliate the claims. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003) ("One of the central purposes of the employment discrimination charge is to put employers on notice of the existence and nature of the charges against them.") (internal quotation marks omitted), *cert. denied*, 124 S. Ct. 1060 (2004); *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994) (noting that the administrative exhaustion requirement fulfills the dual purposes of notice and conciliation).

In light of congressional findings that "the setting of arbitrary age limits regardless of potential for job performance has become a common practice" and in an effort to effectuate the ADEA's stated purpose of "prohibit[ing] arbitrary age discrimination in employment," 29 U.S.C. § 621,[2] we liberally construe

---

[1](...continued)
in Employment Act of 1967," it "was modeled after Title VII").

[2] In passing the ADEA, Congress made the following findings and announced the following purposes:

(a) The Congress hereby finds and declares that -
    (1) in the face of rising productivity and affluence, older workers find themselves disadvantaged in their efforts to retain employment, and especially to regain employment when displaced from jobs;
    (2) the setting of arbitrary age limits regardless of potential for

(continued...)

charges of age discrimination filed with the EEOC. *See Lyons v. England,* 307

F.3d 1092, 1104 (9th Cir. 2002) (noting that "[w]e are required to construe

appellants' EEOC charges with utmost liberality") (internal quotation marks

omitted); *Kells v. Sinclair Buick-GMC Truck, Inc.,* 210 F.3d 827, 836 (8th Cir.

2000) ("In determining whether an alleged discriminatory act falls within the

scope of a discrimination claim, the administrative complaint must be construed

liberally in order not to frustrate the remedial purposes of the ADA and the

ADEA.") (internal quotation marks, citations, and alterations omitted). EEOC

regulations explicitly state that "a charge is sufficient when the Commission

receives from the person making the charge a written statement sufficiently

---

[2](...continued)
job performance has become a common practice, and certain otherwise desirable practices may work to the disadvantage of older persons;

(3) the incidence of unemployment, especially long-term unemployment with resultant deterioration of skill, morale, and employer acceptability is, relative to the younger ages, high among older workers; their numbers are great and growing; and their employment problems grave;

(4) the existence in industries affecting commerce, of arbitrary discrimination in employment because of age, burdens commerce and the free flow of goods in commerce.

(b) It is therefore the purpose of this chapter to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment.

29 U.S.C. § 621.

precise to identify the parties, and to *describe generally the action or practices complained of.*" 29 C.F.R. § 1601.12(b) (emphasis added).

Applying, as we must, the principle of liberal construction, we hold that the Group 1 plaintiffs have exhausted their failure to hire claims. We agree with the plaintiffs that "[t]he charges filed [] do identify the people complaining, and, also, that Ruhrpumpen is being complained about. They describe generally the problem – age discrimination [,] [and] [t]hey give sufficient detail, referring to the events of January 3, 2001." Aplts' Br. at 7-8. Because the charges as filed "identify the parties" and "describe generally the action or practices complained of," 29 C.F.R. § 1601.12(b), they satisfy the requirements set forth in the EEOC regulations. Moreover, the central purposes of the administrative exhaustion requirement have clearly been met in this case. There is no doubt that Ruhrpumpen could discern from the charges filed that the plaintiffs were accusing the company of age discrimination stemming from the events of January 3, 2001, and the charges did not deprive the EEOC of an opportunity to conciliate the claims, as the EEOC could quite easily have discovered in the course of investigating the plaintiffs' allegations that while not terminated on January 3, 2001, the plaintiffs were in fact not hired by Ruhrpumpen on that same date.

The case of *O'Keefe v. Varian Assocs., Inc.*, No. 95 C 4281, 1998 WL 417498, at *6 (N.D. Ill. July 23, 1998), is particularly instructive here. In

-11-

*O'Keefe*, as in this case, a group of plaintiffs who were not retained following the sale of a company filed EEOC charges alleging wrongful termination in violation of the ADEA. The defendant company argued that the plaintiffs were barred from raising their failure to hire claims because their EEOC charges only stated a claim for wrongful termination. The court disagreed, holding that

> [t]hough plaintiffs' charges may have been factually incorrect in asserting that other employees were not terminated, the allegations in the charges informed the EEOC and the defendants that plaintiffs were complaining that other employees continued working at the . . . facility after plaintiffs were terminated. Because the charge provided notice that the plaintiffs were complaining about the fact that they were not allowed to continue working, the concerns that underlie the "scope of the charge" doctrine are not present.

Id. at *6; *see also Jones v. Dresser Indus., Inc.*, No. 88 C 9780, 1990 WL 93259, at *3 (N.D. Ill. June 18, 1990) (declining to bar plaintiff's retaliation and failure to hire claims even though his EEOC charge only complained of wrongful termination because "it is premature to conclude that [defendant's] failure to hire was not within the scope of [plaintiff's] EEOC charge").

In conclusion, the Group 1 plaintiffs simply used the wrong words, charging that they were "terminated" rather than "not hired." As their brief points out, "Plaintiffs, having worked at the same plant for many years, under different owners, understandably would have considered it but a single employment. When they showed up for work on January 3, 2001, they could understandably consider

-12-

being told to go home as a termination." Aplts' Br. at 8. The outcome in the district court forecloses the plaintiffs' ability to seek a remedy for a violation of their federally-protected rights based on a technicality. There is no suggestion that the charges as filed deprived Ruhrpumpen of fair notice of the plaintiffs' claims, thus we see no reason to bar their failure to hire claims.

## B. Group 2 Plaintiffs

Four plaintiffs–Deetta Hawkins, Pam Duncan, Vernon Harris, and Danny Postrach–did not file charges with the Oklahoma Human Rights Commission or the EEOC. Instead, they attempted to "piggyback" their claims on to the filings made by the other plaintiffs. These Group 2 plaintiffs contend that they are similarly situated to those plaintiffs who did file with the EEOC, bringing them within the "piggybacking" or "single filing" exception to the EEOC individual filing requirement.

The district court held that the plaintiffs could not piggyback their claims because "Plaintiffs have never alleged that this is a class action, wherein other non-party former employees who were similarly situated as the party Plaintiffs are alleged to have claims of a pattern or practice of discrimination by Ruhrpumpen." Aplts' App. at 267. Thus, in order to determine whether the Group 2 plaintiffs may proceed with their claims in district court, we must consider the scope of the single filing rule and whether it is applicable in this case.

-13-

Generally speaking, each plaintiff must exhaust his or her administrative remedies by filing a timely EEOC charge prior to bringing suit. *See Simms,* 165 F.3d at 1326. However, given the widespread concern over discriminatory employment practices and the congressional intent behind Title VII and the ADEA, the federal courts have universally recognized an exception to the individual filing rule which provides that "in a multiple-plaintiff, non-class action suit, if one plaintiff has filed a timely EEOC complaint as to that plaintiff's individual claim, then co-plaintiffs with individual claims arising out of similar discriminatory treatment in the same time frame need not have satisfied the filing requirement." *Allen v. United States Steel Corp.*, 665 F.2d 689, 695 (5th Cir. 1982). This exception to the individual filing requirement is known alternatively as the "single filing rule," *see id.*, or "piggybacking," *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 195 (6th Cir. 1995); *Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008, 1013 (7th Cir. 1988).

"The principle behind the piggybacking rule is to give effect to the remedial purposes of the ADEA and to not exclude otherwise suitable plaintiffs from an ADEA class action simply because they have not performed the useless act of filing a charge." *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1103 (11th Cir. 1996) (internal quotation marks omitted). The act of filing a charge is deemed "useless" in situations in which the employer is already on notice that plaintiffs

may file discrimination claims, thus negating the need for additional filings. *See Horton v. Jackson County Bd. of County Comm'rs*, 343 F.3d 897, 899 (7th Cir. 2003); *see also Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1110 (10th Cir. 2001) ("The policy behind the single filing rule is that it would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC.") (internal quotation marks and alteration omitted); *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1057 (2d Cir. 1990) ("The purpose of the administrative charge requirement is to afford the agency the opportunity to 'seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.' If the agency charged with that task is satisfied that a timely filed administrative charge affords it sufficient opportunity to discharge these responsibilities with respect to similar grievances, it serves no administrative purpose to require the filing of repetitive ADEA charges . . . .") (quoting 29 U.S.C. § 626(d)).

Courts employ several different tests to determine when the single filing rule should apply.

> The broadest test requires only that the claims of the administrative claimant and the subsequent plaintiff arise out of the same circumstances and occur within the same general time frame. . . . A somewhat narrower test requires that the administrative claim give notice that the discrimination is "class-wide," i.e., that it alleges discrimination against a class of which the subsequent plaintiff is a member. A still narrower test requires that

the administrative charge not only allege discrimination against a class but also allege that the claimant purports to represent the class or others similarly situated.

*Howlett*, 49 F.3d at 195 (internal quotation marks omitted). However, regardless of which test is used to determine the scope of the rule, "[i]t is uncontroversial that the 'single filing rule' is not limited to class actions but also can permit a plaintiff to join individual ADEA actions if the named plaintiff filed a timely administrative charge sufficient to permit 'piggybacking' by the joining plaintiff." *Id.* at 194; *see also Tolliver*, 918 F.2d at 1056 ("In Title VII suits, the 'single filing rule' is not limited to class actions but also permits aggrieved plaintiffs to join in a lawsuit brought by individuals who have filed a timely administrative charge . . . ."). In fact, "only the Third Circuit confines the doctrine to class actions." *Horton*, 343 F.3d at 900 (7th Cir. 2003).

Recently, the Seventh Circuit declined to apply the single filing rule and adopted a more limited view of the rule's proper application in light of the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). *See Horton*, 343 F.3d at 899-900 (noting that "the [single filing] doctrine predates *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), which, though principally about the continuing violation doctrine, is emphatic that 'each discrete discriminatory act [i.e., an act that is not a part of a continuing violation] starts a new clock for filing charges alleging that act'")

(quoting *Morgan*, 536 U.S. at 113). Yet the *Horton* court stopped short of concluding that the rule is only applicable to class actions, instead specifically limiting the doctrine to cases like this one "in which the unexhausted claim arises from the *same* unlawful conduct." *Id.*

This circuit recognized the single filing rule in *Thiessen*, 267 F.3d at 1110 (noting that "[f]ederal courts universally hold that an individual who has not filed an administrative charge can opt-in to a suit filed by any similarly situated plaintiff under certain conditions") (internal quotation marks omitted). It is not entirely clear from *Thiessen* which test has been adopted by this circuit. *Thiessen* references both the broadest test, allowing a non-filing plaintiff "to piggyback on the EEOC complaint filed by another person who is similarly situated," *id.* (quoting *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1223 (5th Cir. 1995)), and the somewhat narrower test, requiring that "the EEOC charge actually filed gave the employer notice of the collective or class-wide nature of the charge," *id.* (quoting *Gilitz v. Compagnie Nationale Air France*, 129 F.3d 554, 558 (11th Cir. 1997)). However, while *Thiessen* did concern a group of non-filing plaintiffs who wanted to opt-in to a class (though the class was decertified), nothing in that decision can be construed as limiting the single filing rule to class action situations.

We conclude that the single filing doctrine is applicable here. This case

involves twenty-six plaintiffs, making it much more like a class action than the two-plaintiff action in which the Seventh Circuit declined to apply the single filing rule in *Horton*. Moreover, the plaintiffs' unexhausted claims stem from the same conduct as the filed charges. In fact, as noted, this case is practically identical to the situation that the *Horton* court used as an example when single filing is most appropriate. *See Horton*, 343 F.3d at 899 ("If for example the employer has fired every worker over the age of 40 and one of them has filed a timely charge, he can guess that others will, and there is no need to flood the EEOC with identical charges.").

As stated above, *Thiessen* references two slightly different tests for determining whether the single filing rule applies. We need not decide at this time whether the Group 2 plaintiffs must satisfy the broadest test for determining whether the rule applies or the slightly narrower test, as the plaintiffs have satisfied the requirements of each.

In particular, the Group 2 plaintiffs undoubtedly satisfy the broadest form of the test, as they are clearly similarly situated to the Group 1 plaintiffs, and their claims "ar[o]se out of the same circumstances and occur[ed] within the same general time frame." *Howlett*, 49 F.3d at 195. The plaintiffs also satisfy the somewhat narrower test, as the filed charges stated, "This charge is made on behalf of all others similarly situated." *See* Aplts' App. at 144-68. The inclusion

of that phrase clearly suggested to Ruhrpumpen that there were or might have been other plaintiffs, and it can easily be construed as having given Ruhrpumpen notice of the "collective or class-wide nature of the charge." *See Theissen*, 267 F.3d at 1110 (noting that "[a]s long as the EEOC and the company are aware of the nature and scope of the allegations, the purposes behind the filing requirement are satisfied and no injustice or contravention of congressional intent occurs by allowing piggybacking") (internal quotation marks omitted). Consequently, we hold that the four non-filing plaintiffs should be excused from the individual exhaustion requirement by virtue of the single filing rule and that the district court erred in dismissing their claims.

### III. CONCLUSION

We conclude that the Group 1 plaintiffs did exhaust their failure to hire claims with the EEOC and that the Group 2 plaintiffs, who failed to timely file charges with the EEOC, are entitled to "piggyback" on the claims of the Group 1 plaintiffs. Accordingly, we REVERSE the district court's grant of summary judgment to Ruhrpumpen and remand for further proceedings consistent with this opinion.