**F I L E D**

**PUBLISH**

**October 20, 2005**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DAVIS SHIKLES,

        Plaintiff – Appellant,

v.

SPRINT/UNITED MANAGEMENT
COMPANY,

        Defendant – Appellee.

---

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION;
CHAMBER OF COMMERCE OF
THE UNITED STATES OF
AMERICA; EQUAL EMPLOYMENT
ADVISORY COUNCIL,

        Amici Curiae.

No. 03-3326

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 02-CV-2556-KHV)**

---

Dennis E. Egan, The Popham Law Firm, Kansas City, Missouri, for Plaintiff-
Appellant.

Paul W. Cane, Jr., Paul, Hastings, Janofsky & Walker, San Francisco, California
(David M. Eisenberg, Baker Sterchi Cowden & Rice, Kansas City, Missouri;
Chris R. Pace, Sprint Corporation, Overland Park, Kansas; and Katherine C.
Huibonhoa, Paul, Hastings, Janofsky & Walker, San Francisco, California; with
him on the brief), for Defendant-Appellee.

Barbara L. Sloan, Equal Employment Opportunity Commission ("EEOC"), Washington, D.C. (Eric S. Dreiband, Lorraine C. Davis, Vincent J. Blackwood, EEOC, Washington, D.C., with her on the brief) for amicus curiae EEOC in support of Plaintiff-Appellant.

Stephen A. Bokat, Robin S. Conrad, Ellen Dunham Bryant, National Chamber Litigation Center, Washington, D.C., and Ann Elizabeth Reesman, McGuiness Norris & Williams, Washington, D.C., filed a brief on behalf of amicus curiae The Equal Employment Advisory Council and The Chamber of Commerce of the United States in support of Defendant-Appellee.

---

Before **EBEL**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **FRIOT**, District Judge.[*]

---

**EBEL**, Circuit Judge.

---

Plaintiff Davis Shikles appeals from a district court order granting summary judgment to Defendant Sprint/United Management Company ("Sprint") in Shikles' lawsuit alleging that Sprint violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., by denying him promotions and terminating him.  (Aplt. App. at 12-13, 485, 510.)  This appeal presents three important legal issues: (1) whether a private sector claimant must cooperate with the EEOC, while the EEOC processes the claimant's charge of discrimination, in order to exhaust his or her administrative remedies under the ADEA; (2) whether

---

[*] The Honorable Stephen P. Friot, District Court Judge, Western District of Oklahoma, sitting by designation.

a plaintiff's exhaustion of administrative remedies is a jurisdictional prerequisite to suit under the ADEA; and (3) whether a plaintiff's failure to exhaust administrative remedies justifies dismissing his or her suit or instead justifies granting summary judgment to the defendant.

We hold that (1) the ADEA requires a private sector claimant to cooperate with the EEOC in order to exhaust his or her administrative remedies; (2) a plaintiff's exhaustion of administrative remedies is a jurisdictional prerequisite to suit under the ADEA; and (3) a plaintiff's failure to exhaust his or her administrative remedies does not justify granting summary judgment to the defendant, but rather justifies dismissing the case for lack of jurisdiction. Accordingly, we vacate the district court's judgment in favor of Sprint and remand the case to the district court with instructions to dismiss the case for lack of jurisdiction. Because we resolve the case on jurisdictional grounds, we do not reach the parties' arguments addressing the merits of Shikles' claim of discrimination.

## BACKGROUND

Plaintiff Davis Shikles began working in Sprint's billing department in 1997, when he was fifty-six years old. Sprint terminated Shikles in March 2002 as part of a reduction in force.

On May 21, 2002, Shikles filed a charge with the EEOC alleging that his termination constituted unlawful age discrimination. While the charge also referenced the Kansas Human Rights Commission, the EEOC took responsibility for investigating the charge under a work-sharing arrangement with the state agency. See 29 C.F.R. § 1601.13(a)(4)(ii); id. § 1626.10(c); see also 2 Barbara Lindemann & Paul Grossman, Employment Discrimination Law 1217 & n.86, 1221-23 (3d ed. 1996). Over the course of the next three months, Shikles and his attorney cancelled three scheduled telephone interviews with the EEOC investigator assigned to his case, failed repeatedly to return the investigator's telephone calls, and failed to submit information requested by the investigator.[1]

---

[1]Specifically, in a June 17, 2002 letter the EEOC investigator assigned to Shikles' case, Michael Katz, requested that Shikles participate in a telephone interview so that the EEOC could determine whether to investigate his claim further. Katz advised Shikles' attorney that because the EEOC's ability to make an appropriate processing decision depended on the agency's obtaining information from Shikles, if the interview with Shikles were not conducted within thirty days, Katz would recommend that the EEOC cease processing the charge based on Shikles' failure to cooperate.

On June 27, Katz scheduled a telephone interview with Shikles for July 10, 2002. In a July 2 follow-up letter to Shikles' attorney confirming the interview, Katz asked Shikles to forward detailed information in advance of the interview on his claim that he had been denied promotional opportunities. Shikles did not submit the requested information, and asked the EEOC to reschedule the interview from July 10 to July 19, 2002. The July 19 interview was cancelled at Shikles' attorney's request. Katz attempted to contact Shikles' attorney by telephone four times after July 19 to reschedule the interview, but received no response.

On August 1, 2002, Katz sent both Shikles and Shikles' attorney a letter,

(continued...)

As a result, Shikles never provided the investigator with any information on his claim of discrimination beyond that contained in his initial EEOC charge.

On August 20, 2002—approximately ninety-one days after Shikles filed his EEOC charge—the EEOC dismissed the charge "because '[h]aving been given 30 days in which to respond, [he] failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve [his] charge.'" A Notice of Right to Sue accompanied the charge dismissal notice.

In October 2002, Shikles sued Sprint in the United States District Court for the District of Kansas. Sprint moved for summary judgment, asserting that Shikles' failure to cooperate in the EEOC's investigation of his charge constituted a failure to exhaust administrative remedies that deprived the district court of subject matter jurisdiction. Shikles opposed the motion only as to his layoff claim, abandoning his claim about being denied promotions. The district court granted Sprint's motion, holding that "[a]llowing plaintiff to proceed with an ADEA claim after failing to cooperate with the EEOC would thwart the

---

[1](...continued)
warning that if Shikles did not participate in a telephone interview by August 19, 2002, Katz would recommend that Shikles' charge be dismissed. On August 6, 2002, Katz and Shikles arranged a telephone interview for August 16, 2002. On August 16, Shikles' attorney cancelled the interview.

administrative process and turn the EEOC filing requirement into a mere formality."

On appeal, Shikles argues that he exhausted his administrative remedies because he filed a charge with the EEOC, as the ADEA requires, and the EEOC's sixty-day period of jurisdiction over his claim had ended by the time that he filed suit in the district court. The EEOC has filed an amicus brief supporting Shikles that argues that the employment discrimination laws do not condition a plaintiff's right to file a lawsuit against his employer on his cooperation with the EEOC during its administrative investigation of his or her charge. Sprint counters that because Shikles did not cooperate in the EEOC's investigation of his charge, he failed to exhaust his administrative remedies.

## DISCUSSION

We review the district court's grant of summary judgment de novo. See Simms v. Okla. ex rel Dep't of Mental Health & Substance Abuse Services, 165 F.3d 1321, 1326 (10th Cir. 1999).

## I.    Relationship of the ADEA to Title VII and the ADA

The text of the ADEA does not state whether a plaintiff must cooperate with the EEOC while the EEOC processes his or her charge. Thus, we must look elsewhere to answer that question. The structure of the ADEA indicates that we should look to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§§ 2000e et seq.—and, by extension, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq.—for an answer, and interpret the relevant provisions of the ADEA consistently with their counterparts in Title VII and the ADA.

The ADEA's enforcement scheme combines elements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and Title VII. See Lorillard v. Pons, 434 U.S. 575, 577-78 (1978). Violations of the ADEA generally are to be treated in the same manner as violations of the FLSA. See 29 U.S.C. § 626(b). For example, "[a]mounts owing . . . as a result of a violation" of the ADEA are to be treated as "unpaid minimum wages or unpaid overtime compensation" under the FLSA, and the rights created by the ADEA are to be "enforced in accordance with the powers, remedies, and procedures" of specified sections of the FLSA. Id.

In another nod to the Fair Labor Standards Act ("FLSA"), the ADEA establishes two primary enforcement mechanisms. See Lorillard, 434 U.S. at 579. Under the FLSA provisions incorporated in § 7(b) of the ADEA, 29 U.S.C. § 626(b), the government may bring suit on behalf of an aggrieved individual for injunctive and monetary relief.[2] See 29 U.S.C. §§ 216(c), 217. The incorporated

_____

[2]When the ADEA was first enacted, this authority was vested in the Secretary of Labor, but it was later transferred to the EEOC. See Reorg. Plan No.
(continued...)

FLSA provisions—together with § 7(c) of the ADEA, 29 U.S.C. § 626(c)—also authorize private civil actions for "such legal or equitable relief as will effectuate the purposes of" the ADEA.

However, the portion of the ADEA most relevant to this case is more similar to Title VII than to the FLSA. See 1 Lindemann & Grossman, supra, at 559. Although not required by the FLSA, prior to the initiation of any ADEA action, an individual must file a charge with the EEOC so that the agency can attempt to eliminate the alleged unlawful practice through informal methods. See 29 U.S.C. § 626(d); see also Lorillard, 434 U.S. at 579-80. After allowing the EEOC sixty days to notify the defendant of the charge and to attempt to conciliate the alleged unlawful practice, the individual may file suit (provided the EEOC has not brought suit on his or her behalf). See id. § 626(c)&(d).

This scheme tracks that of Title VII. See 42 U.S.C. § 2000e-5. In fact, Congress amended this aspect of the ADEA to follow Title VII more closely. See Age Discrimination in Employment Act Amendments of 1978, Pub. L. No. 95-256, § 4, 92 Stat. 189, 190 (providing that the timely filing of a charge with the EEOC is a prerequisite to bringing a civil suit, as under Title VII, and eliminating the prerequisite of a timely notice of intent to file suit); see also Civil Rights Act

---

[2](...continued)
1 of 1978 § 2, 3 C.F.R. 321 (1979), reprinted in 92 Stat. 3781 (1978) and 5 U.S.C.A. app. 458 (West 1996).

of 1991, Pub. L. No. 102-166, § 115, 105 Stat. 1071, 1079 (providing that a civil suit must be filed within ninety days from the receipt of notice that EEOC proceedings have been terminated, rather than within two or three years of the unlawful conduct, as under the FLSA); Reorg. Plan No. 1 of 1978 § 2 (transferring enforcement authority over the ADEA from the Department of Labor, which also enforces the FLSA, to the EEOC, which also enforces Title VII).

To the extent that the charge filing requirements of the ADEA and Title VII are similar, courts must construe them consistently. See Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756 (1979) ("Since the ADEA and Title VII share a common purpose, the elimination of discrimination in the workplace, since the language of [the ADEA at 29 U.S.C. § 633(b)] is almost in haec verba with [42 U.S.C. § 2000e-5(c) of Title VII], and since the legislative history of § [633(b)] indicates that its source was § [2000e-5(c)], we may properly conclude that Congress intended that the construction of § [633(b)] should follow that of § [2000e-5(c)].."); Foster v. Ruhrpumpen, Inc., 365 F.3d 1191, 1194 (10th Cir. 2004) (stating that "the ADEA and Title VII have virtually identical requirements with respect to the filing of EEOC charges"); see also Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 395 n.11 (1982) (observing that "when Congress in

- 9 -

1978 revised the filing requirement of the [ADEA]," the revision "was modeled after Title VII").[3]

Because we must construe the charge filing requirements of the ADEA and Title VII consistently, to the extent that those requirements are similar, we must also construe the charge filing requirements of the ADEA and the ADA consistently. This is because Title I of the ADA, which prohibits employment discrimination on the basis of disability, explicitly incorporates the powers, remedies, and procedures of Title VII, making clear that the procedural requirements of those two provisions must be construed identically. See 42 U.S.C. § 12117(a).

With this framework in mind, we turn to case law addressing the charge filing requirements of Title VII and the ADA. This case law dictates the result in this case.

## II.     Cooperation and the Exhaustion of Administrative Remedies

---

[3]Oscar Mayer addressed the ADEA's requirements for filing a charge with state authorities, not the ADEA's requirements for filing a charge with the EEOC that are applicable in this case. However, because Foster and Zipes address the ADEA's charge-filing requirements more generally, and do not focus on those provisions dealing with cross-filings with state authorities, those cases make clear that the logic of Oscar Mayer extends to other ADEA provisions setting out requirements for filing charges. See Foster, 365 F.3d at 1194 (addressing whether plaintiffs' EEOC charges were sufficient to exhaust their failure to hire claims); Zipes, 455 U.S. at 395 n.11 (addressing whether filing a charge with the EEOC is a jurisdictional prerequisite to suit).

## A.    Tenth Circuit Precedent

Although we have not addressed whether a plaintiff must cooperate with the EEOC in order to exhaust his or her administrative remedies under the ADEA, we have held that such cooperation is required under both Title VII and the ADA. See McBride v. Citgo Petroleum Corp., 281 F.3d 1099, 1107 (10th Cir. 2002) ("[T]he district court was not clearly erroneous in finding that [the plaintiff] failed to cooperate with the EEOC and, therefore, failed to exhaust her administrative remedies [under the ADA]."); Khader v. Aspin, 1 F.3d 968, 971 (10th Cir. 1993) (holding that under Title VII "'[g]ood faith effort by the employee to cooperate with the agency and the EEOC and to provide all relevant, available information is all that exhaustion requires'" and continuing that "when a complainant refuses or fails to provide the agency information sufficient to evaluate the merits of the claim," he or she has not exhausted his or her administrative remedies) (quoting Wade v. Sec'y of Army, 796 F.2d 1369, 1377 (11th Cir. 1986)).

Thus, because we must interpret the similar charge filing requirements of the ADEA, Title VII, and the ADA consistently, we will be bound in this case by our prior Tenth Circuit authority interpreting the charge filing requirements of Title VII and the ADA, unless there is a meaningful difference between this case, McBride, and Khader.

### 1. McBride

Shikles' attempt to distinguish McBride on its facts is unavailing. McBride did not merely fail timely to submit a signed and dated copy of her discrimination charge, as Shikles contends. Rather, as in the case at bar, in McBride the plaintiff did not return messages from the EEOC left with her counsel, did not provide requested materials, and failed to discuss her charge with the EEOC. 281 F.3d at 1106.

The EEOC's efforts to distinguish McBride from the case at bar are similarly unavailing. The EEOC notes that McBride relies on 29 C.F.R. § 1601.18(b), which applies only to charges under Title VII and the ADA, see 29 C.F.R. § 1601.1, to find that a claimant must cooperate with the EEOC in order to exhaust his or her administrative remedies. The EEOC suggests that the lack of a comparable regulation under the ADEA indicates that cooperation from a charging party is not required in ADEA cases.

However, the EEOC conceded in its brief and at oral argument that it has the inherent power in both Title VII/ADA and ADEA cases to dismiss the charge of a noncooperating claimant. Because the EEOC has no more power to dismiss a charge on the basis of a charging party's non-cooperation in a Title VII/ADA case than in an ADEA case, the EEOC's argument that its explicitly delineated power

- 12 -

to dismiss a Title VII/ADA case establishes that cooperation is somehow more valued or necessary in Title VII/ADA cases is without merit.

Indeed, the EEOC's decision to codify its inherent power to dismiss a charge in a regulation affecting Title VII and the ADA, but not the ADEA, is not driven by substantial differences between the impacted statutes, but rather by minor procedural distinctions. Under Title VII, a plaintiff must obtain a right to sue letter from the EEOC as a prerequisite to suit. See 42 U.S.C. § 2000e-5(f)(1); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 797-98 (1973). The provision cited by McBride, 29 C.F.R. § 1601.18, helps delineate how such a letter is to be issued if a charging party does not cooperate with the EEOC and therefore has his or her case dismissed. See 29 C.F.R. § 1601.28(b)(3) (explaining the steps that should be taken if a charge has been dismissed under § 1601.18). However, a right to sue letter is not a prerequisite to suit under the ADEA. See 29 U.S.C. § 626. Thus, there is less need to set out a formal regulation delineating the precise procedures to follow in issuing a right to sue letter if the EEOC dismisses a claimant's charge, since delay or neglect in issuing such a letter will not adversely impact the claimant's ability to enforce his or her claim in court. Thus, the absence of a regulation under the ADEA delineating the EEOC's power to dismiss a claimant's charge based on the claimant's non-cooperation does not establish that cooperation is not required under the statute.

The EEOC also argues that McBride is distinguishable because the ADEA's charge-filing requirements differ from those under Title VII and the ADA. The EEOC emphasizes the fact that its receipt of an ADEA charge does not trigger a duty to investigate the complaint, as does its receipt of a Title VII charge. Instead, the agency merely must notify the "prospective defendants" and "seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference and persuasion." Compare 29 U.S.C. § 626(d) (ADEA), with 42 U.S.C. § 2000e-5(b) (Title VII). However, while the EEOC is not formally tasked with investigating ADEA claims, the EEOC must necessarily investigate in order to engage in conciliation, conference, and persuasion. See Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 368 (1977) ("[T]he EEOC . . . is a federal administrative agency charged with . . . investigating claims of employment discrimination and settling disputes, if possible, in an informal, noncoercive fashion.").

Thus, McBride is not distinguishable from the case at bar.

### 2. Khader

Shikles and the EEOC argue that cases like Khader are distinguishable because they are cases involving federal employees, rather than private sector employees. It is true that in cases involving federal employees the investigating agency or EEOC has an adjudicative function not applicable in private sector

- 14 -

cases, and federal employees' administrative obligations are different than those of private sector employees.  See 42 U.S.C. § 2000e-16 (Title VII); 29 U.S.C. § 633a (ADEA).

However, Khader does not imply that the result in that case might have been different had the plaintiff been a private sector employee, rather than a federal employee.  Moreover, the requirements placed on federal and private sector employees are in essence quite similar because a federal employee may take his case to district court, where it is subject to de novo review, see Chandler v. Roudebush, 425 U.S. 840, 848 (1976), and neither an agency nor the EEOC can enforce its "adjudications" in federal-sector cases.  Thus, a federal employee may find himself or herself in district court in substantially the same position as a private sector employee.  As a result, Khader is not distinguishable from the case at bar simply because Khader involved a federal employee.

### 3.    Analysis of Tenth Circuit Precedent

Accordingly, we hold that a private sector employee must cooperate with the EEOC in order for the employee to exhaust his or her administrative remedies under the ADEA.  While we hold that a private sector employee must cooperate with the EEOC, we emphasize that compliance must be judged by commonsense standards.  Perfect cooperation with the EEOC is not required.  Rather, a claimant must merely cooperate as part of a good faith attempt to allow the EEOC a

- 15 -

reasonable opportunity to reach the merits of his or her charge.     See Khader, 1 F.3d at 971.  It is only when a plaintiff's non-cooperation effectively prevents the EEOC's investigation and conclusion efforts such that the EEOC proceeding essentially becomes a sham or meaningless proceeding that a charging party's non-cooperation will amount to a failure to exhaust administrative remedies.  Thus, we expect that it will be rare for a charging party's non-cooperation to be a basis for the defendant to challenge the court's jurisdiction.  Further, most claimants will provide at least minimal cooperation with the EEOC as it is ordinarily in the self-interest of a claimant to attempt to resolve his or her case quickly and informally with the benefit of the EEOC's expert assistance.

## B.    Other Precedent

We are convinced of the soundness of our holding in part because other courts of appeals have dismissed ADEA cases in which the charging party failed to cooperate with the investigating federal agency.  For example, the D.C. Circuit affirmed the dismissal of an ADEA suit in Rann v. Chao, 346 F.3d 192, 198, 199 (D.C. Cir. 2003), based on a federal employee's failure to cooperate in an investigation conducted by the Labor Department's Equal Employment Opportunity office.  In that case, following an unsuccessful attempt at informal mediation with the Labor Department, Rann provided an investigator with an initial formal complaint, but then failed to respond to repeated requests to submit

- 16 -

a signed affidavit or to provide additional details.  Id. at 194.  Concluding that Rann had engaged in "months of . . . stonewalling" and had "in no way attempted to exhaust the administrative process," the D.C. Circuit held that his claim had properly been dismissed.  Id. at 196-97; see also Wrenn v. Sec'y, Dep't of Veterans Affairs, 918 F.2d 1073, 1078 (2d Cir. 1990) (noting that a federal employee must participate in the administrative investigation of his ADEA charge in good faith and that the failure to do so may preclude the bringing of an age discrimination claim, since "[a] claimant . . . must cooperate in the administrative investigation of the complaint by making specific charges and by providing information necessary to the investigation") (internal citations omitted).  While these cases involved federal employees, they are persuasive in the case at bar for the reasons discussed in connection with Khader.

A number of federal district courts have dismissed ADEA suits in which charging private sector employees failed to cooperate or otherwise failed to exhaust their administrative remedies.  See Haggard v. Standard Register Co., No. 01-2513-CM, 2003 WL 22102133 at *6 n.3 (D. Kan. Aug. 1, 2003) (unpublished) ("[A]llowing a plaintiff to proceed with an ADEA claim after failing to cooperate with the EEOC would thwart the administrative process and turn the EEOC filing requirement into a mere formality."); Green v. Heidelberg U.S.A., 854 F. Supp. 511, 513 (N.D. Ohio 1994) (dismissing suit based on the plaintiff's failure to

cooperate with the EEOC where the plaintiff failed to respond to the EEOC's efforts to interview him regarding his allegations); see also Kozlowski v. Extendicare Health Servs., Inc., No. 99-4338, 2000 WL 193502 at *3-4 (E.D. Pa. Feb. 17, 2000) (unpublished) (noting that a claimant is required to cooperate with the EEOC during the sixty-day period of the EEOC's exclusive jurisdiction over an ADEA charge but refraining from dismissing the suit because the record did not make clear whether the plaintiff's non-cooperation had occurred during or after this sixty-day period).[4]  Such holdings give us further confidence in our own holding.

## C.    Public Policy

Requiring a claimant to cooperate with the EEOC in order to exhaust his or her administrative remedies under the ADEA is consistent with established public policy emphasizing the importance of voluntary cooperation in the enforcement of federal antidiscrimination laws.  The ADEA embodies this policy in stating that the EEOC "shall attempt to eliminate the discriminatory practice or practices

---

[4]Cf. Brown v. Tomlinson, 383 F. Supp. 2d 26, 29 (D. D.C. 2005) (finding that the plaintiff failed to exhaust his administrative remedies as required by Title VII by failing to comply with EEOC procedures, submitting incomplete and tardy discovery responses, and initiating his own discovery efforts only half-heartedly); Smith v. Koplan, 362 F. Supp. 2d 266, 268 (D. D.C. 2005) (stating, in the context of a Title VII claim, that "[c]ourts equate cases of failing to cooperate with the agency as cases where a plaintiff has failed to exhaust her administrative remedies").

alleged, and to effect voluntary compliance . . . through informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b); see also 29 C.F.R. § 1626.15. Moreover, in Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974), the Supreme Court observed:

> Cooperation and voluntary compliance were selected as the preferred means for achieving [Title VII's] goal. To this end, Congress created the Equal Employment Opportunity Commission and established a procedure whereby existing state and local equal employment opportunity agencies, as well as the Commission, would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit.

Id. at 44. Other courts of appeals have noted that cooperation by the charging party is indispensable to the EEOC's processing of a charge. See, e.g., Jordan v. United States, 522 F.2d 1128, 1131 (8th Cir. 1975) ("Implicit in the . . . attempted control of . . . discrimination by administrative and judicial machinery is a degree of cooperation from the complaining party. A full development of the pertinent facts cannot be had without the disclosure by the aggrieved employee of the facts serving as a basis for his complaint."); Wrenn, 918 F.2d at 1078-79 ("The purpose of the good faith participation requirement is to give the administrative process an opportunity to work and to enhance the chances of administrative resolution."); Hill v. Potter, 352 F.3d 1142, 1146 (7th Cir. 2003) ("[R]efus[al] to cooperate with the EEOC" constitutes "a worse form" of "failure to exhaust" than not initiating

the administrative process at all.). This is because the time is intended to be used for meaningful dialogue and conciliation efforts, not just as a cooling-off period, and the EEOC cannot engage in conciliation without the active engagement of both sides to a dispute.

Indeed, in drafting the ADEA, Congress opted to require would-be plaintiffs to wait sixty days before filing suit precisely to afford the EEOC or its state counterpart the opportunity to conciliate disputes informally and thereby to divert them from the courts. See H.R. Conf. Rep. No. 950, 95th Cong., 2d Sess. 12 (1978), reprinted in 1978 U.S.C.C.A.N. 504, 534; Howard Eglit, 1 Age Discrimination § 6.37 at 6-229 (2d ed. 1994); see also Oscar Mayer, 441 U.S. at 755 ("Congress intended through [Title VII] to screen from the federal courts those problems of civil rights that could be settled to the satisfaction of the grievant in a voluntary and localized manner.") (internal quotations and citations omitted).

More generally, the law often imputes a requirement of good faith to the performance of obligations. Given the importance of voluntary cooperation to the enforcement of federal antidiscrimination laws, it seems reasonable that so many courts have imputed a requirement of good faith in the filing and prosecution of a charge with the EEOC. A claimant who files a charge and then totally fails to cooperate with the EEOC has not complied with this requirement. Thus, while

our holding is driven by precedent, the holding is also consistent with public policy.

### D.    Statutory Text

The EEOC argues that the text of the ADEA specifies only a handful of administrative requirements that a private sector plaintiff must fulfill before bringing a discrimination lawsuit.  The statute is silent as to whether a plaintiff must cooperate with the EEOC during its investigation of his or her claim.  Thus, the EEOC argues that cooperation cannot be required as a prerequisite to suit.

It is true that the Supreme Court has refused to read into the ADEA procedural prerequisites to suit that are not expressly provided in the text of the statute.  For example, Oscar Mayer refuses to read into 29 U.S.C. § 633 (the ADEA provision requiring plaintiffs to commence state administrative proceedings before filing suit) an additional requirement that the state charge be timely filed under state law.  441 U.S. at 758-65.

However, Oscar Mayer is distinguishable from the case at bar.  If Oscar Mayer had adopted a rule requiring plaintiffs to commence state proceedings in a timely fashion under state law as a prerequisite to filing suit in federal court under the ADEA, a plaintiff's ability to enforce his or her federal rights might

- 21 -

have been foreclosed by states setting unreasonably short statutes of limitations for the filing of state charges. Thus, <u>Oscar Mayer</u> rests in part on concerns of one sovereign foreclosing rights guaranteed by the statutes of another. <u>Id.</u> at 760-61. Such concerns distinguish <u>Oscar Mayer</u> from the case at bar, in which the allegedly additional procedural requirements under consideration are under the control of the same sovereign guaranteeing the right.

Moreover, at issue in <u>Oscar Mayer</u> were completely new requirements—state statutes of limitations—not anchored to something already in the statute. 441 U.S. at 760. At issue in the case at bar is not a completely new requirement; instead, at issue is the natural implication of criteria already in the statute. The need for cooperation with the EEOC is inherent in the EEOC filing requirements already in the statute and is integral to the overall structure of the statute. Such cooperation is necessary to ensure that a charge is not a sham and that it instead provides enough information to make conciliation attempts meaningful. Thus <u>Oscar Mayer</u> is distinguishable from the case at bar.

Our conclusion that <u>Oscar Mayer</u> is distinguishable from the case at bar draws support from the way that we and other courts have construed Title VII. The Supreme Court has noted that Title VII, like the ADEA, specifies "with precision" the administrative requirements that a private sector plaintiff must satisfy before bringing a discrimination lawsuit. <u>Alexander</u>, 415 U.S. at 47. The

- 22 -

Court has stated that the prerequisites to suit under Title VII, like the ADEA, are only those contained in the statutory text. See McDonnell Douglas, 411 U.S. at 798 (noting that the prerequisites to filing a Title VII suit are filing a timely charge and acting after receiving a notice of right to sue). And the Court has rejected attempts to read requirements into Title VII, like the ADEA, beyond those expressly provided by Congress. See, e.g., Mohasco Corp. v. Silver, 447 U.S. 807, 816 n.19 (1980) (striking down a judicially-created requirement that a Title VII plaintiff initiate state proceedings within 180 days of the alleged discrimination); McDonnell Douglas, 411 U.S. at 798-99 (rejecting the argument that a plaintiff could not initiate a Title VII lawsuit unless the EEOC had found reasonable cause on the claim).

Nevertheless, following these decisions, we and other courts have ruled that a claimant must cooperate with the EEOC in order to exhaust his or her administrative remedies under Title VII. See, e.g., Khader, 1 F.3d at 971; see also McBride, 281 F.3d at 1107 (addressing the ADA). That is, courts have held that Title VII contains a cooperation requirement, despite the Supreme Court's admonition that no requirements beyond those in the statute should be imposed. Thus, it is clear that we and other courts have viewed the need for cooperation as

implicit in Title VII, and not as an additional requirement beyond those provided in the statute itself.[5]

### E. EEOC Concerns

#### 1. Degree of Deference

The EEOC states in its amicus brief that it "does not agree that a charging party's failure to cooperate during the administrative process precludes him from later proceeding against his employer in court." Rather, the EEOC argues that "if the charging party has satisfied the express prerequisites to suit [laid out in the text of the ADEA], he has the right to sue his employer, based on the charge, and have a court determine the merits of his discrimination claim."

The EEOC is the principal arm of the federal government charged with eradicating employment discrimination, see Reorg. Plan No. 1 of 1978, 3 C.F.R. 321 (1979), and the ADEA vests the EEOC with full power to issue legislative rules. See 29 U.S.C. § 628. This suggests that the EEOC's interpretations of the ADEA may bind courts' interpretation of the statute. See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44 (1984).

---

[5]Even if Oscar Mayer were not distinguishable, because Oscar Mayer was decided before McBride and Khader, the Tenth Circuit cases control. In re Smith, 10 F.3d at 724.

- 24 -

However, "amicus briefs, opinion letters, and policy guidances do not reflect the deliberate exercise of interpretive authority that regulations and guidelines demonstrate."  Rebecca Hanner White, The EEOC, the Courts, and Employment Discrimination Policy: Recgnizing the Agency's Leading Role in Statutory Interpretation, 1995 Utah L. Rev. 51, 105.  Thus, the Supreme Court has not afforded Chevron deference to EEOC "interpretations" promulgated only in such materials.  See Gregory v. Ashcroft, 501 U.S. 452 (1991) (refusing to defer to EEOC conclusion articulated only in the course of litigation, rather than in a deliberative exercise of interpretive authority)[6]; Skidmore v. Swift & Co., 323 U.S. 134, 138-40 (1944) (giving limited deference to FLSA administrator's interpretations issued in interpretive bulletin, opinion letters, and amicus brief).

---

[6]In a separate opinion, Justice White stated that EEOC's litigating position not expressed in any formal issuance from the agency, such as a regulation, guideline, policy statement, or administrative adjudication, is entitled to little if any deference.

Gregory, 501 U.S. at 485 n.3 (White, J., concurring in part, dissenting in part, and concurring in the judgment).

In this case, the EEOC simply asserts its position in an amicus brief.[7]  Thus we are not bound by the agency's interpretation of the prerequisites to suit under the ADEA.  See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 212 (1988) ("We have never applied [Chevron deference] to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice.").

Moreover, the agency's position is not particularly persuasive.  See Skidmore, 323 U.S. at 140 ("The weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.").  The EEOC's brief provides no indication of whether the agency has been thorough in its consideration of the issue, and it appears that the agency's position has not been subjected to any sort of public scrutiny.  The agency's interpretation is not one adopted contemporaneously with the passage of

[7]To the extent that the EEOC argues that its position is laid out in its Dismissal and Notice of Rights form and in regulations found at 29 C.F.R. §§ 1601.18, 1601.28, and 1626.18, see (EEOC Br. at 16-17.), and therefore is entitled to greater deference, the EEOC's contention is without merit.  There is no indication that the EEOC's form represents the sort of "deliberative conclusions as to the meaning of [the] laws" the EEOC is charged with enforcing that would entitle such a form to deference.  NationsBank of N.C., N. A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 256-57 (1995).  Moreover, the general phraseology of both the form and the regulations cited by the EEOC does not support the specific proposition that the EEOC advances in this litigation.

the ADEA.  See General Elec. Co. v. Gilbert , 429 U.S. 125, 142 (1976).
Moreover, the agency's position is directly contrary to the numerous well-supported opinions from the Supreme Court and various courts of appeals highlighting the importance of voluntary cooperation to the enforcement of the federal antidiscrimination statutes generally, and the ADEA in particular.

Thus, we need not and do not afford significant deference to the EEOC's litigation position.

### 2.    Effect of EEOC Conduct on Judicial Review

The EEOC also argues that requiring a charging party to cooperate with the EEOC is in tension with a long line of cases holding that the EEOC's conduct during the administrative process does not affect the charging party's right to a de novo judicial determination of the merits of his complaint.  (EEOC Br. at 18.) See, e.g., Scheerer v. Rose State College, 950 F.2d 661, 663 (10th Cir. 1991); Associated Dry Goods Corp. v. EEOC, 720 F.2d 804, 809 & 812 (4th Cir. 1983); Ward v. EEOC, 719 F.2d 311, 313-14 (9th Cir. 1983).  The EEOC's principal concern is that if it dismisses cases based upon an EEOC determination of a claimant's failure to cooperate, courts will not be able to make a true de novo interpretation of whether cooperation really occurred.  The EEOC argues that a district court will not be able to make a de novo determination of whether a plaintiff's non-cooperation constitutes a failure to exhaust without giving some

- 27 -

effect to the EEOC's handling of the charge. As a result, the EEOC believes its "investigators may feel constrained to retain charges . . . even though that means devoting less time to charges that, in the investigator's judgment, would otherwise warrant more extensive treatment."

The EEOC's argument ignores the reality that the district court's review is of the conduct that gave rise to the agency's decision to dismiss, not the agency's decision itself. See McBride, 281 F.3d at 1105-06 ("It is for the district court to determine whether the plaintiff has complied with the regulatory requirements when the defendant raises the issue of failure to exhaust administrative remedies."). We have evaluated Shikles' cooperation with the EEOC without relying on the EEOC's decision to dismiss his charge.[8]

## F. Application

In this case, Shikles failed to cooperate with the EEOC at all. Shikles failed to make himself available for a telephone interview. He failed to provide

---

[8]The EEOC also argues that it is odd to say that because Shikles did not withdraw from the EEOC proceeding sixty days after its inception by filing suit—as under the statute he permissibly could have done—he should be barred from bringing an action based on the EEOC's dismissal of his case some thirty-one days later. (EEOC Br. at 24-25.) However, Shikles is barred from bringing suit, not because the EEOC determined approximately ninety-one days after he filed suit that he was not cooperative, but rather because he was not cooperative at any time after he filed a charge—including the first sixty days after filing. Thus, we would reach the same result if Shikles had filed suit immediately after the sixty-day period had expired.

the EEOC with the documents that it requested, or to explain why he could not provide such documents. His attorney did not respond at all to several of the EEOC's attempts to contact him. While we do not hold that any of these facts, on its own, conclusively determines that Shikles failed to cooperate with the EEOC, the combination indicates the total lack of a good faith effort at cooperation. Thus, because Shikles failed to make a good faith effort to cooperate with the EEOC and provide the agency with information sufficient to evaluate the merits of his claim, he failed to exhaust his administrative remedies under the ADEA.[9] See Khader, 1 F.3d at 971.

## III.    Exhaustion as a Jurisdictional Prerequisite to Suit

It is well-established that Title VII requires a plaintiff to exhaust his or her administrative remedies before filing suit. See Ingels v. Thiokol Corp., 42 F.3d

---

[9]There is no need to limit our examination of Shikles' cooperativeness to the sixty day period during which the EEOC had exclusive jurisdiction over his charge. Rather, we look to the entire time during which the EEOC's investigation of Shikles' complaint was ongoing because during that time the EEOC continued to attempt to gather the information necessary to resolve this dispute. Only when the EEOC brought that process to an end by dismissing Shikles' complaint was his further non-cooperation excused.

Of course, Shikles also could have brought that process to an end by filing suit after sixty days. If a plaintiff ceases cooperating with the EEOC after he or she files suit, that subsequent non-cooperation would not result in the plaintiff failing to exhaust his or her administrative remedies, provided he or she has fulfilled all the other prerequisites to suit under the ADEA. This is because at the point that the plaintiff files suit, the usefulness of the EEOC's efforts to divert the case from the courts ends.

- 29 -

616, 624-25 (10th Cir. 1994); Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996).  The ADEA's exhaustion requirement is somewhat less well-established in this circuit, but it is nonetheless clear that such a requirement exists.  See Foster, 365 F.3d at 1194.

Unlike many other circuits, we have held that a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under Title VII—not merely a condition precedent to suit.  See Jones, 91 F.3d at 1399 n.1. Because the ADEA and Title VII have virtually identical requirements with respect to the filing of EEOC charges, see Foster, 365 F.3d at 1194, our holdings on the jurisdictional effect of Title VII filings determine the jurisdictional effect of ADEA filings.  See In re Smith, 10 F.3d at 724.  As a result, we hold that a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under the ADEA.

In this case, Shikles failed to exhaust his administrative remedies.  Thus, the district court lacked subject matter jurisdiction over his claim.

IV.    **Proper Disposition of the Case**

"In general . . . summary judgment is an inappropriate vehicle for raising a question concerning the court's subject-matter jurisdiction . . . .  Therefore, although some courts have entered summary judgment on jurisdictional grounds, the general rule is that it is improper for a district court to enter judgment under

Rule 56 for defendant because of a lack of jurisdiction." Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2713, at 235 (citations omitted); see Thompson v. United States, 291 F.2d 67, 68 (10th Cir. 1961). When a district court correctly determines that it lacks subject matter jurisdiction over a case, but incorrectly determines that the lack of subject matter jurisdiction justifies the entry of summary judgment, we have vacated the judgment and remanded the case to the district court for entry of an order dismissing the case. See Thompson, 291 F.2d at 68.

Thus, in this case, while the district court correctly determined that Shikles was required to cooperate with the EEOC in order to exhaust his administrative remedies, and correctly determined that Shikles' exhaustion of administrative remedies was a jurisdictional prerequisite to his ADEA suit, the court erred in granting summary judgment to Sprint. Rather, the district court should have dismissed Shikles' case based on a lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, we VACATE the district court's judgment in favor of Sprint and REMAND the case to the district court with instructions to dismiss the case for lack of subject matter jurisdiction.