**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 5, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

In re: GARY WOODROW
FLANDERS, individually and as
officer, director, shareholder
Canyon Quarry Co., Farmer &
Merchants Bank, Great Northern
Land Co., MetroBank, N.A.,

     Debtor.

------------------------------

GARY WOODROW FLANDERS,

     Plaintiff - Appellant,

v.

EVELYN JANE LAWRENCE;
DANIEL A. WEST; MOYE WHITE
LLP; JAMES T. BURGHARDT,

     Defendants - Appellees.

No. 15-1327
(BAP No. 14-055-CO)
(Bankruptcy Appellate Panel)

_____

**ORDER AND JUDGMENT**[*]
_____

---

[*]     The parties have not asked for oral argument, and we conclude that oral argument would not materially aid our consideration of the appeal. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). Thus, we have decided the appeal based on the briefs.

    Our order and judgment does not constitute binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value under Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **BRISCOE**, **BACHARACH**, and **McHUGH**, Circuit Judges.

_____

This case grew out of two other cases. One was in state court, where Mr. Gary Flanders and his wife, Ms. Evelyn Lawrence, divorced. The other case was in bankruptcy court, where Mr. Flanders was discharged from his pre-petition debts. In the present action, Mr. Flanders sues Ms. Lawrence and her attorneys, alleging that the state court erroneously divided marital assets.

The bankruptcy court granted summary judgment to Ms. Lawrence and her attorneys, concluding that the *Rooker-Feldman* doctrine precluded jurisdiction over some of the claims, that other claims were subject to issue preclusion, and that Mr. Flanders either lacked standing to pursue, or simply lost on, the rest of his claims. The Tenth Circuit Bankruptcy Appellate Panel affirmed, and Mr. Flanders appeals. We conclude that each claim fails based on the *Rooker-Feldman* doctrine, issue preclusion, or lack of standing.[1]

## I.    The Bankruptcy and Divorce Proceedings

Mr. Flanders filed for bankruptcy in 1998. Two years later, divorce proceedings began in Colorado state court. The bankruptcy trustee then

---

[1]    The defendants also asserted laches as a defense. Given our disposition, however, we decline to reach that issue.

filed an adversary proceeding to assert fraudulent-transfer claims against Mr. Flanders, Ms. Lawrence, and a number of entities that Ms. Lawrence owned or controlled, including the Great Northern Transportation Company. In 2001, the trustee entered into a settlement agreement with Ms. Lawrence and her entities, releasing the bankruptcy estates "from any and all claims and causes of action that have been made or could have been made in the Adversary Proceeding, whether known or unknown, from the beginning of the world, to the date of [the] Release." R. at 341.

Mr. Flanders received a Chapter 7 discharge in 2002. This discharge (1) "void[ed] any judgment at any time obtained, to the extent that such judgment [was] a determination of the personal liability of [Mr. Flanders] with respect to any debt discharged," and (2) "operate[d] as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of [Mr. Flanders]." 11 U.S.C. § 524(a)(1)–(2).

In 2007, it became apparent that Mr. Flanders's bankruptcy estate would enjoy a surplus of roughly $231,000. The expectation of a surplus led the federal district court to ask the state court to determine how much of the bankruptcy surplus would have been considered marital property. Mr. Flanders argued in state court that the settlement agreement and bankruptcy discharge had precluded any award to Ms. Lawrence from the

3

bankruptcy surplus. The state court disagreed, finding that the surplus constituted marital property. The state court ultimately awarded judgment to Ms. Lawrence for $563,822.



Mr. Flanders appealed. The Colorado Court of Appeals affirmed on most grounds but vacated and remanded for further findings on one issue not relevant to the matters now before this court. The Colorado Supreme Court denied Mr. Flanders's petition for a writ of certiorari.

Mr. Flanders then filed an adversary proceeding in his bankruptcy case. There he asserted eleven claims against Ms. Lawrence, her divorce attorney (Daniel West), her bankruptcy attorney (James Burghardt), and her bankruptcy attorney's law firm (Moye White LLP). In these claims, Mr. Flanders alleged that (1) the state court's orders had been void *ab initio*, (2) the state court had made erroneous factual findings and legal conclusions, and (3) the defendants had acted in contempt of the discharge injunction and in breach of the settlement and release agreements by asserting pre-petition claims in state court. In the background section of

4

the second amended complaint, Mr. Flanders also alleged violation of the bankruptcy court's automatic stay.

The bankruptcy court ruled that the *Rooker-Feldman* doctrine prevented rejection of the state court's factual findings, but not Mr. Flanders's request for a finding of contempt or sanctions for willfully violating the discharge injunction. Ultimately, however, the bankruptcy court determined that those claims were subject to issue preclusion because they required the parties to relitigate the effect of the discharge.

In addition, the bankruptcy court addressed Mr. Flanders's arguments that the state court's findings had been void *ab initio*. In part, Mr. Flanders argued that the state court had violated the automatic stay and the discharge injunction. According to the bankruptcy court, both of these arguments were invalid, but for different reasons. Reliance on the discharge injunction was impermissible because of issue preclusion; reliance on the automatic stay was impermissible because Mr. Flanders lacked standing to assert the claim.

The Bankruptcy Appellate Panel affirmed. It concluded that the *Rooker-Feldman* doctrine did not apply because none of Mr. Flanders's claims asked the bankruptcy court to review the state-court judgments. The Bankruptcy Appellate Panel then affirmed based on issue preclusion and lack of standing.

5

## II.     Standard of Review

We review the bankruptcy court's decision rather than the Bankruptcy Appellate Panel's. *Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete)*, 412 F.3d 1200, 1204 (10th Cir. 2005). In reviewing the bankruptcy court's grant of summary judgment, we apply the de novo standard. *Spears v. St. Paul Ins. Co. (In re Ben Kennedy & Assocs.)*, 40 F.3d 318, 319 (10th Cir. 1994). Under this standard, we view the evidence favorably to Mr. Flanders. *Gen. Elec. Capital Corp. v. Manager of Revenue & Exofficio Treasurer (In re W. Pac. Airlines, Inc.)*, 273 F.3d 1288, 1291 (10th Cir. 2001).[2]

## III.    Mr. Flanders has forfeited his argument that the bankruptcy court used the wrong version of the bankruptcy code.

According to Mr. Flanders, the bankruptcy court erred by using the current version of 11 U.S.C. § 523 rather than the version that had been in effect when his bankruptcy petition was filed. Mr. Flanders claims that if the earlier statutory version had been used, the bankruptcy court would have concluded that his debt to Great Northern Transportation Co. had been discharged and that the bankruptcy court had enjoyed exclusive jurisdiction over dischargeability.

---

[2]     Because Mr. Flanders proceeds pro se, we liberally construe his filings but do not act as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

Prior to this appeal, Mr. Flanders had not questioned the bankruptcy court's or the Bankruptcy Appellate Panel's reliance on the current statutory version. Thus, we consider this argument forfeited. *See Foster v. Hill (In re Foster)*, 188 F.3d 1259, 1264 n.5 (10th Cir. 1999) (holding that an appeal point was forfeited because the litigant failed to make the same argument when appealing from the bankruptcy court to the district court).

Mr. Flanders points out that

- he raised other challenges to the state court's jurisdiction and

- in his adversary complaint, he mentioned one of the relevant statutes, referred to Ms. Lawrence's obligation to file a § 523 complaint, and asked the bankruptcy court to resolve his claims using applicable bankruptcy law.

But these steps were insufficient to avoid forfeiture, for they did not alert the bankruptcy court to the need to consider the prior version of the statute.[3]

Mr. Flanders contends that the issue is jurisdictional, requiring consideration notwithstanding a forfeiture. *See, e.g.*, *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992). We reject this contention. In

---

[3] Ordinarily we can consider forfeited arguments under the plain-error standard. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). But Mr. Flanders has not argued plain error. As a result, we decline to consider whether use of the current statutory version would constitute plain error. *See id.* at 1130-31 (stating that the failure to argue for plain error "surely marks the end of the road" for an argument that had been forfeited).

7

our view, the jurisdictional nature of the underlying argument does not insulate the issue from forfeiture, for this exception is confined to forfeited jurisdictional arguments made during the pendency of the action in which jurisdiction is at issue. Here, Mr. Flanders brings a collateral attack on the jurisdiction of a different court. *See Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982) ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment."). Thus, the jurisdictional nature of the issue does not preclude a forfeiture.

**IV.    The *Rooker-Feldman* doctrine bars Mr. Flanders's claims that allege injury caused by the state court's rulings.**

The defendants argue that the *Rooker-Feldman* doctrine precludes consideration of Mr. Flanders's claims. We agree with respect to the claims that seek invalidation of the state court's rulings.

**A.    Mr. Flanders did not waive his arguments on the *Rooker-Feldman* doctrine.**

In their dispositive motion, the defendants argued that relief is precluded by the *Rooker-Feldman* doctrine. The Bankruptcy Appellate Panel did not agree, and Mr. Flanders did not discuss the *Rooker-Feldman* doctrine in his opening brief. In responding to that brief, however, the defendants argued that

8

- the *Rooker-Feldman* doctrine presents an alternative ground for dismissal and

- Mr. Flanders waived the issue by declining to address the *Rooker-Feldman* issue in his opening brief.

We do not regard the issue as waived. "When an appellee raises in its answer brief an alternative ground for affirmance, the appellant is entitled to respond in its reply brief." *United States v. Brown*, 348 F.3d 1200, 1213 (10th Cir. 2003). But even if the issue had been waived, we could address it *sua sponte*. The *Rooker-Feldman* doctrine involves subject-matter jurisdiction, which the court can raise on its own. *See PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010) (stating that the *Rooker-Feldman* doctrine involves subject-matter jurisdiction); *Gonzales v. Thaler*, __ U.S. __, 132 S. Ct. 641, 648 (2012) (*sua sponte* consideration of requirements that involve subject-matter jurisdiction).

**B.    The *Rooker-Feldman* doctrine precludes jurisdiction of Mr. Flanders's claims that seek invalidation of the state court's rulings.**

Under the *Rooker-Feldman* doctrine, one cannot complain in federal court of an injury caused by a judgment rendered in state court. *Exxon*

9

*Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).[4] Some of Mr. Flanders's claims involve this sort of complaint.

The *Rooker-Feldman* doctrine does not bar an independent claim even if the claim had already been rejected in state court. *Id.* at 293. In that situation, the outcome is governed by state-law preclusion principles rather than the *Rooker-Feldman* doctrine. *Id.*

In the second amended complaint, Mr. Flanders identified eleven claims. But as Mr. Flanders stated in the introduction to the complaint, all involved "a collateral attack on a state court judgment." R. at 801 ("This adversary proceeding constitutes a collateral attack on two State Court judgments that are void by law *ab initio*." (footnote omitted)).

Ordinarily, collateral attacks on a state-court judgment are barred by the *Rooker-Feldman* doctrine. *Erlandson v. Northglenn Mun. Ct.*, 528 F.3d

---

[4] The *Rooker-Feldman* doctrine applies only if the state-court proceedings became final before the federal proceedings began. *Exxon Mobil Corp.*, 544 U.S. at 284. The bankruptcy court concluded that because the Colorado Supreme Court had denied review on the issues relevant to Mr. Flanders's adversary case, the state-court proceedings had become final for *Rooker-Feldman* purposes even though the action was remanded on an unrelated matter of state law. Mr. Flanders does not question the finality of the state-court proceedings, and we agree with the bankruptcy court's conclusion that there was sufficient finality for *Rooker-Feldman* purposes. *See Guttman v. Khalsa*, 446 F.3d 1027, 1032 n.2 (10th Cir. 2006) (defining finality to include when the state courts have finally resolved all federal questions and only state-law or factual questions remain).

785, 789 (10th Cir. 2008). Nonetheless, we independently consider each claim against the backdrop of the *Rooker-Feldman* doctrine.[5]

Though Mr. Flanders has identified eleven discrete claims, they overlap in substance. Eight of the claims (1-4, 6-7, and 10-11) are based on alleged violations of the bankruptcy discharge. And two of the claims (8-9) involve contempt and sanctions. Two other claims (1 and 4) are based, at least in part, on alleged breaches of the settlement agreement.

### 1. The *Rooker-Feldman* doctrine precludes consideration of the claims to invalidate the state-court rulings by invoking the bankruptcy discharge, but does not preclude consideration of other claims.

In eight of the claims, Mr. Flanders alleges that the state court deprived him of the value of his bankruptcy discharge. This contention

---

[5] Some courts have found an exception to *Rooker-Feldman* when a state court wrongly construes a bankruptcy court's discharge order. *See, e.g.*, *Hamilton v. Herr (In re Hamilton)*, 540 F.3d 367, 373-75 (6th Cir. 2008) (holding that "a state court judgment that modifies a discharge in bankruptcy is void ab initio and the *Rooker-Feldman* doctrine would not bar federal court jurisdiction"); *Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich)*, 229 B.R. 777, 783-84 (B.A.P. 9th Cir. 1999) (substantially the same); *cf. Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir. 1990) (recognizing "that any action taken in violation of the [automatic bankruptcy] stay is void and without effect"). Other courts, however, have declined to recognize such an exception. *See, e.g.*, *Ferren v. Searcy Winnelson Co. (In re Ferren)*, 203 F.3d 559, 559-60 (8th Cir. 2000); *In re Candidus*, 327 B.R. 112, 119 (Bankr. E.D.N.Y. 2005); *In re Toussaint*, 259 B.R. 96, 102-03 (Bankr. E.D.N.C. 2000). We follow our precedents, which have not recognized such an exception.

11

grows out of the state court's characterization of Great Northern Transportation Co. as a marital asset to be awarded to Ms. Lawrence. Before the divorce or the beginning of bankruptcy proceedings, Mr. Flanders and Ms. Lawrence signed promissory notes to Great Northern in exchange for roughly $2 million.



But the bankruptcy court discharged Mr. Flanders's debt under his promissory note.



The state court did not question the discharge.[6] But in valuing Great Northern as a marital asset, the state court considered Mr. Flanders's failure to pay on his promissory note to Great Northern.

According to Mr. Flanders, the state court's valuation of Great Northern effectively nullified any benefit from the bankruptcy discharge.

---

[6] The state court characterized the Great Northern debt as "an account receivable from Ms. Lawrence." R. at 361. This statement reflects recognition of Mr. Flanders's discharge as encompassing his personal liability on the Great Northern note. Thus, the state court implicitly concluded that Mr. Flanders's liability on the Great Northern note had been discharged in bankruptcy.

The state court assessed ownership of Great Northern as a liability, in part because Mr. Flanders had not paid on his promissory note. Based on this valuation of Great Northern, the state court allegedly required Mr. Flanders to pay his ex-wife more than he would otherwise have had to pay.

To determine the applicability of the *Rooker-Feldman* doctrine, we focus on the relief sought by Mr. Flanders. *See PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010) ("[O]ur recent *Rooker-Feldman* jurisprudence has emphasized the relief sought by federal-court plaintiffs."). In the second amended complaint, Mr. Flanders asked the bankruptcy court to grant declaratory relief nullifying the state court's orders. For example, Mr. Flanders's eleventh claim for relief requested an order declaring that

- "the State Court's Orders recorded *February 10, 2009* and *June 22, 2009*, offsetting the $2 Million Commercial Promissory Note owed by Lawrence to [Great Northern Transportation Co.] against the value of [Great Northern], and correspondingly, against the valuation of the Marital Estate, constitutes an attempt to collect and recover one half of that amount ($1 Million) from Flanders, and is a violation of the Discharge Order of *September 4, 2002*, and the State Court orders to the contrary are void *ab initio* in these regards";

- "the State Court's decision to delete or omit $3,148,843.84 of accrued interest, owed by Lawrence to [Great Northern], from the valuation of [Great Northern], and correspondingly, from the valuation of the Marital Estate, constitutes an attempt to collect and recover by offset a discharged pre-petition debt of Flanders, and the State Court's orders to the contrary are void *ab initio* in these regards";

14

- "the State Courts [sic] Order of *February 7, 2007*, is void *ab initio*, as Lawrence's pre-petition claim to those funds was lost by her failure to assert such a claim in the bankruptcy, and thus any such claim was discharged by this Court's Discharge Order of *September 4, 2002*"; and

- "the State Court's Orders recorded *February 10, 2009* and *June 22, 2009*, claiming the Net Equity assets remaining at the end of the bankruptcy case, specifically the [Great Northern Land Co.] stock, [Canyon Quarry Co.] stock, and 6 burial lots, constitute a pre-petition claim, and are void *ab initio* in these regards, as those assets are not marital property, but rather, are Flanders' post-petition, after-acquired assets acquired from the Net Equity of the Bankruptcy Estate."

R. at 824-25 (footnote & boldface omitted).

These requests trigger the *Rooker-Feldman* doctrine, for they depend on a finding that the state court erred and entail relief from the erroneous orders. *See Mann v. Boatright*, 477 F.3d 1140, 1147 (10th Cir. 2007) (holding that a claim for a declaratory judgment, which sought nullification of a probate court's orders, is "precisely the type[] of claim[] encompassed by the *Rooker-Feldman* doctrine"); *Ebel v. Ebel (In re Ebel)*, 139 F. App'x 26 (10th Cir. 2005).[7]

---

[7] Though our opinion in *In re Ebel* is not precedential, it is instructive. There a couple divorced and the husband filed bankruptcy. 139 F. App'x at 27-28. While the bankruptcy proceedings remained pending, the state court divided the marital property. *Id.* at 28. The divorcing husband objected and asked the federal court to vacate the state court's division of property, contending that it had been based on a void stipulation and had involved a denial of due process. *Id.* at 28. We held that this contention was

(continued)

15

Other requests do not facially require relief from the state court's

orders. For example, Mr. Flanders sought

- restitution from Ms. Lawrence for benefits she had obtained in state court by asserting claims that had been discharged in bankruptcy court,

- issuance of contempt and sanctions for pursuing claims discharged in bankruptcy court, and

- injunctions against further collection efforts based on claims discharged in bankruptcy court.

*Id.* at 821-25. These requests are inconsistent with the state court's orders,

as discussed below. But that inconsistency does not trigger the *Rooker-*

*Feldman* doctrine. *See Campbell v. City of Spencer*, 682 F.3d 1278, 1283

(10th Cir. 2012) (stating that a federal claim is not precluded by the

*Rooker-Feldman* doctrine solely because the claim requests relief

inconsistent with a state-court judgment).

We gave a similar example in *Bolden v. City of Topeka*, 441 F.3d

1129 (10th Cir. 2006):

> To illustrate, say a father was deprived of custody of his child by a state-court judgment. If he files suit in federal court, seeking to invalidate the state-court judgment on the ground that the state-court proceedings deprived him of due process or that the judgment was otherwise contrary to federal law, his suit would be barred by *Rooker-Feldman*; the suit usurps the Supreme Court's exclusive appellate jurisdiction because it

unreviewable because the husband's challenge to the state court's division
of property fell under the *Rooker-Feldman* doctrine. *Id.* at 29.

16

> seeks to set aside the judgment based on a review of the prior proceedings. If, however, the father simply brought suit in federal court seeking custody of his child, without raising any complaint about the state-court proceedings, *Rooker-Feldman* cannot be invoked; his federal claim would have been the same even in the absence of the state-court judgment. A myriad of doctrines, including res judicata, would almost certainly bar the suit. But because he is not seeking to overturn a state-court judgment, *Rooker-Feldman* is inapplicable, regardless of whether a favorable judgment in federal court would be inconsistent with that judgment and would "deny a legal conclusion that the state court has reached."

441 F.3d at 1145 (brackets omitted) (quoting *Exxon Mobil*, 544 U.S. at 293).

Our case involves a state court's division of property in a divorce rather than an award of child custody. But the principle is equally applicable. While some of Mr. Flanders's claims are for relief from the state court's orders themselves, other claims could theoretically proceed independently of the state court's orders. All of these claims are inconsistent with the divorce court's orders, but the *Rooker-Feldman* doctrine bars only those claims seeking relief from those orders, like the claims seeking relief from the child-custody orders in the *Bolden* illustration. *See Loubser v. Thacker*, 440 F.3d 439, 441-42 (7th Cir. 2006) (holding that the *Rooker-Feldman* doctrine did not preclude a claim for damages based on wrongdoing that had led to an erroneous judgment in a divorce proceeding).

17

**2.** **The *Rooker-Feldman* doctrine precludes consideration of the claims that seek to invalidate the state-court rulings based on a breach of the settlement agreement.**

Similarly, the *Rooker-Feldman* doctrine precludes consideration of some, but not all, of the claims involving alleged breaches of the settlement agreement. In the bankruptcy proceedings, Ms. Lawrence settled litigation against the trustee. In the present suit, Mr. Flanders claims that the defendants breached the settlement agreement and that the state court allowed the breaches to take place. As a result, Mr. Flanders seeks remedies directed at both the defendants and the state court.

Some of these remedies were targeted to Ms. Lawrence based on her alleged breach of the settlement agreement, such as a declaratory judgment stating that

- "Lawrence's claim to $231,789.70 of surplus cash, part of the Net Equity in the Bankruptcy Estate, and or against Flanders, was a pre-petition claim that had been released by the Settlement Agreement and the Mutual Release";

- "Lawrence's $1 Million pre-petition contribution claim against Flanders toward her $2 Million Promissory Note obligation to [Great Northern Transportation Co.], which was accomplished by an offset against Flanders' share of the Marital Estate, is a claim that had been released under both the Settlement Agreement and the Mutual Release";

- "Lawrence's $1,574,421.91 pre-petition contribution claim against Flanders for half of the accrued interest on the Note through *June 22, 2009*, which was accomplished by deleting the accrued interest on the Note from the valuation of [Great Northern Transportation Co.], functioned as an offset against

18

Flanders' share of the Marital Estate, and is a pre-petition claim that had been released under . . . the Settlement Agreement and the Mutual Release"; and

- "Lawrence's claim to 1000 shares of Great Northern Land Company stock, 1000 shares of Canyon Quarry Company stock, and 6 of 8 burial plots at the Evergreen Cemetery as marital assets are pre-petition claims that had been released under both the Settlement Agreement and the Mutual Release."

R. at 165-66 (footnote & boldface omitted).

Though relief to Mr. Flanders would conflict with the state court's rulings, this conflict is not enough to trigger the *Rooker-Feldman* doctrine. *See* p. 16, above. These claims are akin to a claimant's federal action for child custody after being rebuffed in state court. In *Bolden*, we explained that these claims would fall outside of the *Rooker-Feldman* doctrine. *See* pp. 16-17, above. The same is true of Mr. Flanders's claims involving breach of the settlement agreement after being rebuffed in state court.

But these are not all of Mr. Flanders's claims. In others, Mr. Flanders asks the bankruptcy court to overturn the state court's rulings. For example, Mr. Flanders asks for a declaratory judgment providing that

- the state court lacked "jurisdiction to make any determination as to 'the performance or interpretation of the Settlement Agreement'" and

- "the State Court's orders recorded *February 10, 2009* and *June 22, 2009*, claiming the Net Equity assets remaining at the end of the bankruptcy case, specifically the [Great Northern Land Co.] and [Canyon Quarry Co.] stock, and 6 burial lots, constitute a pre-petition claim and are void *ab initio* in those

19

> regards, as those assets are not marital property, but rather, are Flanders' post-petition, after-acquired assets acquired from the Net Equity of the Bankruptcy Estate."

R. at 825.

Through these claims, Mr. Flanders seeks invalidation of the state court's orders. These claims are akin to a request for a federal court to invalidate a child-custody order, which we said in *Bolden* would trigger the *Rooker-Feldman* doctrine. *See* pp. 16-17, above. Under this doctrine, we cannot entertain Mr. Flanders's request for invalidation of the state court's orders.

* * *

These conclusions leave some claims for violation of the automatic stay and discharge order, breach of the settlement agreement, contempt, and sanctions.

## V. Issue preclusion forecloses relief on Mr. Flanders's remaining claims, which involve violation of the discharge order, breach of the settlement agreement, contempt, and sanctions.

Mr. Flanders claims that the defendants violated the discharge order, breached the settlement agreement, and acted in a way that was contemptuous and sanctionable. We conclude that these claims are barred by issue preclusion because their success would require the parties to relitigate issues that the state court already decided.

20

To determine the preclusive effect of a state-court judgment in a later federal action, we look to the preclusion law of the forum state. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). Colorado is the forum state; and under Colorado law,

> [i]ssue preclusion bars relitigation of an issue if: (1) the issue sought to be precluded is identical to an issue actually determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party to the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

*Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44, 47 (Colo. 2001).

The bankruptcy court correctly concluded that these requirements were met with respect to two key issues:

1.  whether the settlement agreement released Ms. Lawrence's claims to the property remaining after the conclusion of Mr. Flanders's bankruptcy case and

2.  whether Mr. Flanders's discharge prevented the state court from considering his promissory note when valuing and dividing the marital property.

*See* R. at 900-02.

In the state-court proceedings, Mr. Flanders contended that the settlement agreement precluded award of the bankruptcy surplus to Ms. Lawrence. *See id.* at 348. The state court expressly rejected this contention:

21

> Mr. Frank [Mr. Flanders's attorney in state court] argues that the Settlement Agreement and Mutual Release between Ms. Flanders and the Bankruptcy Trustee in 2001 operated to release any claim she might have to the surplus. The Court has carefully read and reviewed those documents and concludes that they did not release any claim Ms. [Flanders] might have to the surplus. Bankruptcy surpluses are returned to the debtor, in this case Mr. Flanders. At the time the bankruptcy was filed the parties were married thus the assets that went into the Bankruptcy estate were marital property and any surplus coming out is marital property. The Release specifically related only to claims that could have been raised in the adversary proceeding that had been filed against Ms. Flanders by the Trustee. The adversary proceeding claims related to fourteen different claims for relief including fraudulent conveyance claims against both Mr. Flanders and Ms. Flanders. The Court further concludes that a bankruptcy surplus does not exist with certainty until the bankruptcy is completed and all creditors and interest paid.

*Id.* The court repeated this holding in a subsequent order:

> In addition [Mr. Flanders] argues that the Settlement Agreement of March 23, 2001 and Mutual Release of April 30, 2001 that settled the bankruptcy adversary proceeding that alleged fraudulent transfer claims against Mr. Flanders, Ms. [Flanders] and their companies acted to discharge any responsibility he might have for any debts. This Court disagrees. The Bankruptcy court did not have jurisdiction over the entire marital estate. Further it appears that most of the remaining debt occurred after Mr. Flanders' [sic] filed bankruptcy in October 1998.

*Id.* at 357.

Mr. Flanders has repackaged the same contention through four allegations in his second amended complaint:

22

1.    The state court's order "constituted a breach of the Settlement Agreement and Mutual Release, for lack of Divorce Court jurisdiction in this matter."

2.    The state court's order was "void *ab initio*" because "the Settlement Agreement of March 23, 2001 reserved jurisdiction to the Federal Bankruptcy Court regarding matters of 'the performance or interpretation of the Settlement Agreement.'"

3.    The assets awarded to Ms. Lawrence could not constitute marital property because "the [bankruptcy court] approved both the Settlement Agreement and the Mutual Release, releasing all claims against the Bankruptcy Estate . . . ."

4.    "The State Court, acting upon Lawrence's claims, allegations, and arguments, granted all 4 of Lawrence's invalid claims, in complete disregard of the Discharge Injunction, Settlement Agreement and the Mutual Release, despite the fact that the State Court approved each of these agreements, the result of which produced State Court orders that were a nullity and void *ab initio*."

*Id.* at 810, 818, 820 (citation & emphasis omitted).

The same is true of Mr. Flanders's claims involving the discharge order. Here, too, Mr. Flanders argued in state court that Ms. Lawrence's claims would require violation of the bankruptcy court's discharge order. *Id*. at 357 ("Mr. Flanders has also argued that since all his debts were discharged by the Bankruptcy Court, he is not responsible for any of the remaining debt in the marriage.").[8] The state court disagreed, reasoning

---

[8]    The record on appeal does not contain the parties' filings in the state district court. As a result, we must depend on the state district court's orders to ascertain what the parties argued.

23

that the bankruptcy court lacked jurisdiction over the entire marital estate. *Id.*

Mr. Flanders renews the claim here, arguing that the state court's division of property "was . . . a violation of [the bankruptcy court's] Discharge Injunction." *Id.* at 150; *see also id.* at 160 (alleging that the state court's division of property was "clearly an attempt to collect on a discharged debt"). The issue here is identical to the one decided in state court, triggering issue preclusion.[9]

Mr. Flanders argues that issue preclusion does not apply because the bankruptcy court had exclusive jurisdiction on the issue of dischargeability. This argument is based on a misunderstanding of Mr. Flanders's claims and the state court's orders. The state court did not purport to decide whether any debts were dischargeable, for dischargeability had already been determined in the bankruptcy proceedings. The state court was called upon to interpret the effect of the discharge on the marital division of property. Mr. Flanders does not suggest that the bankruptcy court had exclusive jurisdiction to interpret the *effect* of a discharge order. *See State Fin. Co. v. Morrow*, 216 F.2d 676, 679 (10th Cir. 1954) ("[T]he right to a discharge and the effect of a

---

[9] Although identity of issues is only one of the four elements of issue preclusion, there is no doubt that the other three elements are met here.

24

discharge are entirely distinct propositions." (internal quotation marks omitted)).[10]

When the state court set out to divide assets, Mr. Flanders argued that the discharge order prevented any award to Ms. Lawrence. In addressing Mr. Flanders's argument, the state court had to interpret the effect of the bankruptcy court's discharge order. That interpretation is entitled to issue-preclusive effect here even if the antecedent determination of dischargeability had fallen within the bankruptcy court's exclusive jurisdiction. Thus, Mr. Flanders cannot relitigate the same argument here. *See Rally Hill Prods., Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 53 (6th Cir. 1995) (stating that the bankruptcy court's exclusive jurisdiction does not alter the rule requiring preclusive effect to state-court judgments).

---

[10]    In his second amended complaint and his appellate briefs, Mr. Flanders characterizes the state court's orders as "void *ab initio*" because they violated the discharge order. This characterization is incorrect. The state court clearly had jurisdiction over the division of property between Mr. Flanders and Ms. Lawrence. If Mr. Flanders is correct on his underlying claims, the state court's division of property might have been erroneous, but that error would not render the orders void. *See Union Joint Stock Land Bank of Detroit v. Byerly*, 310 U.S. 1, 7-8 (1940) (stating that the district court's erroneous application of a statute, which governed administration of a bankruptcy estate, rendered the order voidable (rather than void) and could not be attacked collaterally in a subsequent state-court action); *see also FDIC v. Shearson-American Express, Inc.*, 996 F.2d 493, 498 (1st Cir. 1993) (stating that even if a court had erred in finding no violation of a bankruptcy court's automatic stay, the finding would be "entitled to respect" and invulnerable to collateral attack).

**VI. Mr. Flanders forfeited his argument that the bankruptcy court had erred in determining that he lacked standing to allege violation of the automatic stay.**

Mr. Flanders argues that the bankruptcy court erred in determining that he lacked standing to assert that the state-court orders violated the automatic stay. But he admits that he did not raise this issue before the Bankruptcy Appellate Panel. As a result, this issue was not preserved. *See* pp. 6-8, above.[11]

**VII. Disposition**

The bankruptcy court and Bankruptcy Appellate Panel concluded that the defendants were entitled to summary judgment. We too conclude that Mr. Flanders's claims fail as a matter of law, but summary judgment is not the correct disposition for the claims invalidated based on the *Rooker-Feldman* doctrine or lack of standing. These are defects precluding subject-matter jurisdiction. *See PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010) (*Rooker-Feldman* doctrine); *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 851 (10th Cir. 2015) (standing). For such jurisdictional defects, summary judgment is ordinarily improper. *See* 10A Charles Alan

---

[11] Unlike the general exception to forfeiture for belated arguments that a district court or this court lacks subject-matter jurisdiction, we generally do not consider unpreserved arguments in favor of subject-matter jurisdiction. *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1518 n.2 (10th Cir. 1996).

Wright, Arthur R. Miller, Mary Kay Kane, *Fed. Practice and Procedure*, § 2713, at 235 (3d ed. 1998) ("In general, courts have ruled that summary judgment is an inappropriate vehicle for raising a question concerning the courts['] subject-matter jurisdiction . . . ."), *quoted with approval in Shikles v. Sprint/United Mgt. Co.*, 426 F.3d 1304, 1317-18 (10th Cir. 2005). Instead, these claims should have been dismissed without prejudice. *See Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010) ("[A] dismissal for lack of subject matter jurisdiction is without prejudice and does not have a preclusive effect."). Thus, we remand with instructions to dismiss these claims without prejudice. *See Shikles*, 426 F.3d at 1318 ("When a district court correctly determines that it lacks subject matter jurisdiction over a case, but incorrectly determines that the lack of subject matter jurisdiction justifies the entry of summary judgment, we have vacated the judgment and remanded the case to the district court for entry of an order dismissing the case."). In all other respects, we affirm.

Entered for the Court


Robert E. Bacharach
Circuit Judge

27